UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION

WILLIAM RODRIGUEZ PADRON,

        Plaintiff,                 Case No. 2:26-cv-1182-KCD-DNF

      v.

U.S. IMMIGRATION AND
CUSTOMS ENFORCEMENT,

        Defendant.
_____/

## **ORDER**

Petitioner William Rodriguez Padron is a Cuban national who arrived in the United States in 1980. Ten years later, he adjusted his status to lawful permanent resident. He was then convicted of importing cocaine and served five years in prison. (Doc. 12-1 at 2.)[1]

On January 25, 1993, an immigration judge ordered Padron removed. (Doc. 12-2 at 2.) After his appeal was unsuccessful, the removal order became final. Immigration and Customs Enforcement ("ICE") could not remove Padron at the time, so, in 1988, he was released on an order of supervision. (*Id.*)

For decades, Padron lived in the community under his conditions of release. But then, on November 16, 2025, ICE revoked his supervision and

---

[1] Unless otherwise indicated, all internal quotation marks, citations, case history, and alterations have been omitted in this and later citations.

detained him to execute the removal order. (Doc. 12-1 at 2.) That same day, he was provided notice and given an informal interview. (*Id.* at 2, 7-9, 11.) On December 17, 2025, Padron was served a Notice of Removal to Mexico. (*Id.* at 15.) This lawsuit seeking a writ of habeas corpus followed. For the reasons below, the Petition is **DENIED WITHOUT PREJUDICE**.

## I. Legal Framework

The federal habeas statute, 28 U.S.C. § 2241, provides authority to issue writs of habeas corpus when an individual is "[i]n custody in violation of the Constitution or laws or treaties of the United States." *Id.* § 2241(c)(3). "At its historical core, the writ of habeas corpus has served as a means of reviewing the legality of Executive detention, and it is in that context that its protections have been strongest." *I.N.S. v. St. Cyr*, 533 U.S. 289, 301 (2001). "Section 2241 authorizes federal courts to hear challenges to immigration detention." *Grigorian v. Bondi*, No. 25-CV-22914-RAR, 2025 WL 2604573, at *2 (S.D. Fla. Sept. 9, 2025).

## II. Discussion

The Government first argues that we lack jurisdiction to address Padron's claims under 8 U.S.C. § 1252(g) and § 1252(b)(9). This Court has already addressed these precise arguments and rejected them for the same reasons they fail today. *See Obando-Vargas v. Assistant Dir.*, No. 2:26-CV-

265-KCD-NPM, 2026 WL 796804, at \*1-2 (M.D. Fla. Mar. 23, 2026). The Court thus turns to the merits.

### A. Substantive Due Process

Invoking the Fifth Amendment, Padron first claims that he has been detained beyond the bounds of what substantive due process allows (Doc. 1 at 7.) The Fifth Amendment protects noncitizens during deportation proceedings. At the same time, however, "detention during deportation proceedings [is] a constitutionally valid aspect of the deportation process." *Demore v. Kim*, 538 U.S. 510, 523 (2003). "[T]he through line of history is recognition of the Government's sovereign authority to set the terms governing the admission and exclusion of noncitizens." *Dep't of State v. Munoz*, 602 U.S. 899, 911-12 (2024). "In the exercise of its broad power over naturalization and immigration, Congress regularly makes rules that would be unacceptable if applied to citizens." *Mathews v. Diaz*, 426 U.S. 67, 79-80 (1976).

Because immigration detention is a civil tool rather than a criminal penalty, the constitutional line is generally drawn at punishment. *See Rodriguez-Fernandez v. Wilkinson*, 654 F.2d 1382, 1387 (10th Cir. 1981). By contrast, the Government can lawfully hold a noncitizen to ensure they are present for removal or to keep the public safe. That is simply the machinery of the immigration system doing its job. A substantive due process violation

3

happens only when that machinery breaks down—when the detention loses its reasonable connection to effectuating a removal order and morphs into a penalty. *Cf. Lee v. Stone*, No. 2:11-CV-00014-RWS, 2011 WL 4553147, at *7 (N.D. Ga. Aug. 25, 2011). So long as the custody serves a legitimate immigration purpose rather than acting as a punitive measure, it stays on the right side of the Constitution. *See, e.g.*, *United States v. Salerno*, 481 U.S. 739, 747 (1987); *Rodriguez v. Perry*, 747 F. Supp. 3d 911, 917 (E.D. Va. 2024) ("[A]liens . . . have a substantive due process right to be free of arbitrary confinement pending deportation proceedings.").

Padron cannot show that his current stint in custody is a punishment masquerading as immigration processing or is otherwise arbitrary. He is subject to a final removal order that stands uncontested. The INA explicitly authorizes a return to detention to effectuate such orders. Under the rules, ICE may revoke a noncitizen's release to effectuate removal. 8 C.F.R. § 241.13(i)(2). And the government no doubt has a legitimate interest in doing exactly that—enforcing its laws, ensuring individuals do not flee, and protecting the public. *See Malam v. Adducci*, 469 F. Supp. 3d 767, 790 (E.D. Mich. 2020). Here, the Government revoked Padron's release specifically to enforce his outstanding removal order. Returning him to custody thus serves a recognized, legitimate government objective.

4

Nor are we at the constitutional danger zone. ICE detained Padron on November 16, 2025. He has been in custody just shy of six months. That is short of the indefinite, limbo-like detention that the Supreme Court has rejected under the Fifth Amendment. *See Zadvydas v. Davis*, 533 U.S. 678 (2001). Instead, it falls within the six-month window the *Zadvydas* Court deemed presumptively reasonable to carry out a deportation. *Id.* at 701 (holding that executive agencies may not hold noncitizens longer than six months when removal is not foreseeable and stating, "[a]fter this 6-month period, once the alien provides good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future, the Government must respond with evidence sufficient to rebut that showing").

Padron protests that his removal to Cuba is not likely in the foreseeable future. (Doc. 1 at 7.) First, ICE is attempting to remove him to Mexico, not Cuba. And second, this argument puts the cart before the horse. Until the six-month *Zadvydas* period concludes, detention is presumptively reasonable, and any due process claim is not ripe. *See, e.g., Grigorian v. Bondi*, Case No. 25-CV-22914-RAR, 2025 WL 1895479, at *8 (S.D. Fla. July 8, 2025); *Lopez v. Dir. of Enf't and Removal Operations*, Case No. 3:25-cv-1313-JEP-SJH, 2026 WL 261938, at *12 (M.D. Fla. Jan. 26, 2026); *Guerra-Castro v. Parra*, Case No. 25-cv-22487-GAYLES, 2025 WL 1984300 at *4

(S.D. Fla. July 17, 2025) (finding habeas petition "premature" because "Petitioner has not been detained for more than six months").

### A. Procedural Due Process

Padron turns next to the procedural mechanics of his re-detention. He claims that ICE's decision to revoke his supervision violated the Fifth Amendment's guarantee of procedural due process. The Court cannot agree. To understand why, start with the baseline reality of Padron's legal status. He is a noncitizen subject to a final, unexecuted order of removal who has been imposed on a felony conviction. His release on supervision was a matter of administrative grace born of logistical necessity, not a permanent constitutional entitlement. When the Government determines that circumstances have changed and it is finally time to carry out its removal order, the Constitution does not demand a full-dress, pre-deprivation trial. Due process, as the Supreme Court has often reminded us, is flexible. It "calls for such procedural protections as the particular situation demands." *Morrissey v. Brewer*, 408 U.S. 471, 481 (1972).

In the context of revoking a noncitizen's supervised release and detaining him, like here, ICE's regulations strike that constitutional balance by guaranteeing written notice and an informal interview that allows the individual to respond. *See* 8 C.F.R. §§ 241.4(l)(1), 241.13(i). According to the unrequited record, Padron received both. (*See* Doc. 12-1 at 7-9.) He got

6

exactly what the Fifth Amendment requires in this context—notice and a meaningful opportunity to be heard. *See Mathews v. Eldridge*, 424 U.S. 319, 333 (1976).

The Constitution guarantees a fair process, not a favorable result. Because ICE afforded Padron the requisite notice and an opportunity to be heard, his procedural due process claim fails.

## IV. Conclusion

Padron's Fifth Amendment challenge to the length of his detention is premature, and the procedural due process claim fails, so the habeas petition must be **DENIED**. However, this denial is without prejudice to him refiling a new petition should his current detention exceed the six-month mark, and he can demonstrate there is no significant likelihood of removal in the reasonably foreseeable future. The Clerk is **DIRECTED** to terminate any pending motions and close the case.

**ORDERED** in Fort Myers, Florida on May 11, 2026.

Kyle C. Dudek
United States District Judge

7